**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JOSEPH A. SWEENEY, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 05-080 T |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | March 13, 2006 |

**DEFENDANT'S MOTION TO**
**DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

The Defendant, the United States of America, respectfully moves pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the above-captioned matter in its entirety for lack of subject matter jurisdiction and/or for failure to state a claim. In support of this motion, the Defendant submits the accompanying memorandum of law.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

VICTORIA S. SHIN
Special Attorney for the
District of Rhode Island
157 Church Street
New Haven, Connecticut 06510
Telephone: (203) 821-3799
Facsimile: (203) 773-5373

**CERTIFICATE OF SERVICE**

I certify that the foregoing Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) was served via first-class mail on this 13th day of March, 2006, on the following:

Francis J. Flanagan
Sayer, Regan, Thayer & Flanagan
130 Bellevue Avenue
Newport, RI 02840

Victoria S. Shin
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JOSEPH A. SWEENEY, | : | |
| Plaintiff, | : | Civil Action No. 05-080 T |
| v. | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | March 13, 2006 |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION**
**<u>TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)</u>**

The Defendant, the United States of America, respectfully moves pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the above-captioned matter in its entirety for lack of subject matter jurisdiction and for failure to state a claim, respectively.

## I. BACKGROUND[1]

The Plaintiff, Joseph A. Sweeney ("the Plaintiff" or "Mr. Sweeney") was, at all relevant times, employed by the United States as a Paralegal Specialist at Naval Station Newport, Newport, Rhode Island. Complaint ("Compl."), ¶ 1. In the fall of 2001, Mr. Sweeney complained to his superiors at the Newport Naval Station about his concerns that Lieutenant Thomas Rutledge ("Lieutenant Rutledge"), the Staff Judge Advocate, was engaging in illegal activities. Compl., ¶¶ 3, 6.

In the fall of 2001, Ruth Cooper ("Captain Cooper"), a Captain of the United States Navy, and the Commanding Officer at the Naval Station Newport, Compl. ¶ 2, took various

---

[1] The following alleged facts are derived from the Complaint. They are assumed for the purposes of this motion only to be true, as dictated by the law recited in Section II, *infra*.

actions against Mr. Sweeney, including isolating him from clients and co-workers, embarrassing him, and suspending him. Compl. ¶¶ 7-9. Additionally, Captain Cooper referred to Mr. Sweeney as "homosexual." ¶ 10. The Plaintiff alleges that, as a result of the treatment he endured, he suffered from "severe depression." ¶ 13.

In the winter of 2002, Mr. Sweeney reported to Executive Office, Commander James Cunha and Master Chief Bruce White, that Captain Cooper was engaging in illicit activities, abusing her authority, and wasting federal funds. Compl. ¶ 14. On or about April 9, 2002, Captain Cooper ordered service upon Mr. Sweeney of a "Notice of Proposed Five (5) Day Suspension." Compl. ¶ 16.

On or about April 10, 2002, Mr Sweeney filed a complaint with the Department of Defense, Inspector General, regarding Mr. Rutledge's alleged illegal activities. Compl. ¶ 17. On or about April 18, 2002, Captain Cooper suspended Mr. Sweeney from work from April 23, 2002 through April 25, 2002. Compl. ¶ 18. Mr. Sweeney was again suspended for ten (10) days, starting September 18, 2002. Compl. ¶ 23. During the ten day suspension, Captain Cooper ordered a demolition and renovation of the building in which Mr. Sweeney's office was located. Compl. ¶ 24.

On or about November 5, 2002, Mr. Sweeney received another suspension, for twenty-one (21) days starting April 28, 2003, for unauthorized absence from work on October 29, 2002. Compl. ¶ 29. On or about August 4, 2003, the Navy commenced an investigation into Captain Cooper, which resulted in dismissal of Captain Cooper from her command at Naval Station Newport for, *inter alia*, mismanagement of resources and creating a negative command climate. Compl. ¶ 31.

Mr. Sweeney initiated the instant lawsuit on February 23, 2005, *see* Compl. at 1. The Complaint cites a single federal statute, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*., Compl. at 1, pursuant to which he purports to seek compensation for certain emotional injuries allegedly resulting from: Negligent Hiring/Supervision/Retention (Count 1); Intentional Infliction of Emotional Distress (Count 2); Negligent Infliction of Emotional Distress (Count 3); Violations of Rhode Island Fair Employment Practices Act ("Rhode Island FEPA") (Count 4); Violations of Rhode Island Whistleblower's Act (Count 5); and Infringement of Right to Privacy (Count 6).

On or about June 20, 2005, the Defendant filed a Motion to Dismiss, dkt. ## 11, 12. However, on July 5, 2005, the parties filed a motion stay the proceedings pending review of Mr. Sweeney's claims by the Office of Workers Compensation ("OWCP") for a determination of whether the Plaintiff's claims are preempted by the Federal Employee Compensation Act ("FECA"), 5 U.S.C. §§ 8101-8193. *See* dkt. #12 at 5 ("The parties agree that a substantial question regarding FECA coverage exists."). Additionally, on July 8, 2005, the Defendant voluntarily withdrew its motion to dismiss pending OWCP's review of Mr. Sweeney's case. *See* dkt. # 14. The Court granted the parties' motion to stay as well as a subsequent request for an extension thereof. *See* dkt. ## 18, 20. In the Court's most recent grant to continue the stay, the Court indicated that "the Stay is granted until January 1, 2006, or until the [OWCP] issues its decision in the Plaintiff's FECA proceedings." *See* dkt. # 20.

On or about January 23, 2006, the OWCP issued its Notice of Decision ("the OWCP Notice"), attached hereto as Exhibit A, denying Mr. Sweeney compensation for general failure to

substantiate his claims and asserted medical condition.[2]

## II. STANDARD

"In ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), a court must construe the complaint liberally, treat all well-pleaded facts as true, and indulge all reasonable inferences in favor of the plaintiff." *Morey v. State of Rhode Island*, 359 F. Supp. 2d 71, 74 (D.R.I. 2005) (citing *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996) (citations omitted). "However, in ruling on a Rule 12(b)(1) motion, a court is not limited to the face of the pleadings. A court may consider any evidence it deems necessary to settle the jurisdictional question." *Id.* (citations and internal quotation marks omitted); *see Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002) (observing that the court may consider materials beyond the pleadings on a Rule 12(b)(1) motion) (citations omitted). "It is the Plaintiff's burden to prove the existence of subject matter jurisdiction." *Id.* at 75 (citing *Murphy v. United States*, 45 F.3d, 522 (1st Cir. 1995)); *see Palazzolo v. Ruggiano*, 993 F. Supp. 45, 46 (D.R.I. 1998) ("Once a defendant challenges a court's subject matter jurisdiction, the plaintiff has the burden of establishing that jurisdiction exists.") (citing *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992)).

"Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate only if it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

---

[2] Upon communication with Plaintiff's counsel and with the Department of Labor ("DOL"), it is the Defendant's understanding that Mr. Sweeney has filed an appeal of the OWCP's decision, and that he requested an oral hearing in connection therewith. According to the DOL, it may take upwards of eight months to complete an oral hearing and render a decision on the appeal. For purposes of the pending court matter, however, it matters not the outcome of the appeal because, as discussed *infra*, even if the FECA does not cover, and thereby preempt, Mr. Sweeney's claims, his claims are nevertheless preempted by alternative federal statutes.

relief.'" *Masterson v. U.S.*, 200 F. Supp. 2d 94, 97 (D.R.I. 2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III. DISCUSSION

### A. Counts One, Two, Three, Five, And Six Are Preempted By The FECA

On January 23, 2006, the OWCP determined that Mr. Sweeney was not entitled to damages because, and despite several requests by the OWCP for additional evidence, Mr. Sweeney failed to submit evidence to show that the alleged injuries occurred within the performance of duty. *See* OWCP Notice at 1. Since the OWCP made a negative determination regarding Mr. Sweeney's eligibility for compensation for a coverable injury, the FECA preempts Mr. Sweeney's FTCA[3] claims, and divests the Court of subject matter jurisdiction over all claims for injuries set forth in the Complaint.[4]

The FECA "provides a comprehensive system of compensation for federal employees who sustain work-related injuries." *United States v. Lorenzetti*, 467 U.S. 167, 168 (1984). Moreover, the FECA "provides the exclusive avenue of redress for a federal employee's 'injury sustained while in the performance of his duty.'" *Bruni v. United States*, 964 F.2d 76, 78 (1st Cir. 1992) (quoting 5 U.S.C. § 8102). "The liability imposed by FECA supplants all other liability (including tort liability under the FTCA or other statutes) on the part of the United States to an

---

[3] "The FTCA provides a limited waiver of the United States government's sovereign immunity 'for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Montijo-Reyes v. United States*, 436 F.3d 19, 23-24 (1st Cir. 2006) (quoting 28 U.S.C. § 1346(b) (2000)).

[4] The OWCP addressed the allegations of Counts One, Two, Three, Four, and Six at pages 3-6 of the OWCP Notice, under the section titled "Allegations of a 'Campaign of Harassment.'" Count Five, alleging retaliation for whistleblowing, is discussed at pages 11-15 of the OWCP Notice.

injured federal employee." *Id.* As the Supreme Court explained in *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190 (1983), the FECA:

> [W]as designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity. In enacting this provision, Congress adopted the principal compromise -- the 'quid pro quo' -- commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.

*Id.* at 193-94 (citations omitted).

"The Secretary of Labor is vested with the power to 'administer, and decide all questions arising under' the FECA and his action in denying or granting compensation is final and conclusive and *may not be reviewed by a court of law*." *Bruni*, 964 F.2d at 79 (quoting 5 U.S.C. § 8128(b)(1) and (2), and § 8145)) (emphasis added). Claims under the FECA "raise two questions" (1) is the injury within the scope of FECA, and (2) is the plaintiff entitled to compensation under the facts of her case." *Moe v. United States*, 326 F.3d 1065, 1068 (9th Cir. 2003). "The Secretary must determine, as an initial matter, whether a claim falls within the purview of the FECA." *Tippetts v. United States*, 308 F.3d 1091, 1094 (10th Cir. 2002) (citation omitted).[5] If the plaintiff's injuries are of the "type" covered by the FECA, then the FECA

---

[5] The Ninth Circuit, in contrast, declared that the presiding court may determine FECA coverage. *Moe*, 326 F.3d at 1068. The First Circuit, has not squarely addressed this issue, but has, in *Bruni*, cited to a Third Circuit decision, *Heilman v. United States*, 731 F.2d 1104, 1109 (3d Cir. 1984), for its pronouncement that if a claim falls within FECA, then federal courts lack subject matter jurisdiction over the matter. This is consonant with the Supreme Court's language in *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81 (1991), discussed *infra.*

In any event, even adopting the Ninth Circuit's approach in *Moe* would not salvage Mr. Sweeney's claim, since in the same decision the Ninth Circuit stated that, "[a] plaintiff need only allege a colorable claim under FECA for our courts to lose jurisdiction over the FTCA action." *Moe*, 326 F.3d at 1068. *See Noble v. United States*, 216 F.3d 1229, 1235 (11th Cir. 2000) ("If the Secretary determines the injury falls within FECA's coverage, the federal courts generally lack jurisdiction to review the Secretary's decision to award or deny compensation for the injury") (citing 5 U.S.C. § 8128(b)).

preempts the FTCA claims, and those claims should be dismissed for lack of jurisdiction. *Id.*[6] Indeed, the statute states explicitly that the Secretary "in allowing or denying a payment . . .is (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). *See Gizoni*, 502 U.S. at 90 ("The FECA contains an 'unambiguous and comprehensive' provision barring any judicial review of the Secretary of Labor's determinations of FECA coverage.") (citing *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 780 n. 13). "Consequently, the courts have no jurisdiction over FTCA claims where the Secretary determines that FECA applies." *Id. See Swafford v. United States*, 998 F.2d 837, 841 (10th Cir. 1993) (holding that the Secretary of Labor, not the court, "has the final say as to the scope of the FECA").

In this case, the OWCP concluded that Mr. Sweeney "failed to meet [his] burden of proof in establishing that [he] was injured in the performance of duty, as alleged, as required for coverage under the [FECA]." OWCP Notice, at 1. The Defendant recognizes that the foregoing language, in addition to the balance of the OWCP's decision, can be read as finding that the FECA does not apply to Mr. Sweeney because the evidence does not show that he sustained his injuries in the course of duty. However, even if FECA does not preempt Mr. Sweeney's claims, an FTCA action against the United States cannot proceed in this forum because, as discussed *infra*, another comprehensive and preclusive statute bars federal subject matter jurisdiction.

---

[6] The First Circuit has not addressed the question of whether the FECA contemplates claims for psychological injury, taking, instead, a more broadly deferential position towards the Secretary's determinations regarding compensation under the FECA. *See Bruni*, 964 F.2d at 79 (quoting 5 U.S.C. § 8128(b)(1) and (2), and § 8145 The Ninth Circuit, however, has found that FECA covers emotional injuries. *See Moe*, 326 F.3d at 1068.

B. Counts One, Two, Three, Five and Six Are Preempted by The CSRA

Even in the absence of FECA applicability and attendant preemption, any and all of Mr. Sweeney's claims based on alleged unsupported or improper employment actions, *see* Compl. ¶¶ 9, 12, 16, 18, 20, 23, 24, 27, and 29, are conclusively preempted by the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 2301 *et seq.*, and therefore there is no federal subject matter jurisdiction over them.

The First Circuit has recognized that, "There is no . . . serious dispute that the CSRA preempts challenges to personnel actions brought under federal law." *Berrios v. Dept. of Army*, 884 F.2d 28, 30 (1st Cir. 1989) (citing *Bush v. Lucas*, 462 U.S. 367 (1983)). The CSRA "comprehensively overhauled the civil service system," *Lindahl v. OPM*, 470 U.S. 768, 773 (1985), "replacing a patchwork of rules and regulations with a 'new framework for evaluating adverse personnel actions against [federal employees].'" *Jarvis v. Cardillo*, No. 98 Civ. 5793 (RWS), 1999 WL 187205, at *3 (S.D.N.Y. Apr. 6, 1999) (quoting *Lindahl*, 470 U.S. at 774).[7] *See Black v. Reno*, No. 99CIV2704 (RWS), 2000 WL 37991, at *7 (S.D.N.Y. Jan. 18, 2000) ("A plaintiff complaining of actions concerning matters relating to [his] employment that occurred during the course of employment is restricted to the remedies provided by the CSRA."). The statute preempts any prior, judicially-recognized grounds for review of federal personnel actions . . . . ." *Id.* *See United States v. Fausto*, 484 U.S. 439, 443 (1988).

Courts have "long held that there is no implied right of action under the CSRA allowing plaintiff to remedy alleged violations of the merit systems principles in federal district court." *Paegle v. Dept. of the Interior*, 813 F. Supp. 61, 66 (D.D.C. 1993) (collecting cases). Rather,

[7] All unpublished authorities are attached hereto as Exhibit B.

Congress established in the Act "a detailed enforcement scheme to effect its purpose,' requiring that plaintiff petition the Office of Special Counsel to review claims of prohibited personnel practices and seek correction before the Merit Systems Protection Board." *Id.* (quoting *Borrell v. U.S. Int'l Comm. Agency*, 682 F. 2d 981, 987 (D.C.Cir. 1982)). "Congress created the MSPB to provide an initial administrative review of employment action before any judicial remedy may be sought." *Mills v. United States Postal Serv.*, 977 F. Supp. 116, 120 (D.R.I. 1997). Indeed, the First Circuit explained that, "The legislative history of the CSRA establishes beyond dispute that Congress intended that statute to provide an exclusive procedure for challenging federal personnel decisions." *Berrios*, 884 F.2d at 31. *See Montplaisir v. Leighton*, 875 F.2d 1, 8 (1st Cir. 1989) ("Given the comprehensive nature of the Act's remedial scheme and the disruption which private tort actions would cause to its finespun fabric, we think it readily evident that Congress did not intend . . . supplementary judicial remedies of the sort envisioned by appellants."); *see also Tucker v. Def. Mapping Agency*, 607 F.Supp. 1232, 1239 (D.R.I. 1985) ("[T]he CSRA is so precise and delicately balanced, that the engrafting of ancillary remedies upon the framework of the Act would inevitably create chaos within the federal sector, and sow the seeds of impermissible conflict."). Exhaustion of administrative remedies as set forth in the CSRA is obligatory. *Mills*, 977 F. Supp. at 120.

Review of the Complaint reveals that Mr. Sweeney substantially relies on the history of disciplinary actions taken against him as evidence of unfair and abusive treatment that allegedly caused emotional harm. However, there is no assertion or suggestion in the Complaint that Mr. Sweeney filed an initial grievance for improper employment action, much less an appeal to the

MSPB, over which the Court of Appeals for the Federal Circuit alone has jurisdiction to review.[8] *Sher v. United States Dept. of Veterans Affairs*, No. 04-182-B-W, 2005 WL 1862413, at *1 (D. Me. Aug. 4, 2005) (citing 5 U.S.C. § 7703(b)(1)) (citation omitted).

While it may appear the height of inequity that the CSRA may limit some remedies available to Mr. Sweeney under state law, the First Circuit noted, "that injured employees might be left without a means of recovering money damages is a necessary consequence of the nature of (comprehensive nature of the CSRA). Congress in its wisdom, was fully entitled to prefer administrative enforcement to civil trials." *Roth v. United States*, 952 F.2d 611, 615 (alterations in original) (citation omitted).[9]

1. The Whistleblower's Protection Act of 1989 Explicitly Bars Jurisdiction Over Count Five

Count Five, brought under the Rhode Island Whistleblower's Act[10], R.I. Gen.

---

[8] To the extent Mr. Sweeney's claims for prohibited employment practices stem from allegations of discrimination, he presents what is denominated a "mixed case," which may be pursued either with the MSPB or the EEOC. *See Downey v. Runyon*, 160 F.3d 139, 141-42 (2d Cir. 1998) ("The CSRA provides two paths toward redress for [federal employees] who allege that an adverse employment action was wholly or partly based on prohibited discrimination. CSRA provides that aggrieved employees may either bring a 'mixed complaint' before the [EEO], or a mixed appeal before the MSPB.") (citing 5 U.S.C. § 7702(a)(1) & (2), 29 C.F.R. § 1614.302(a)(1) (defining mixed case complaint; 29 C.F.R. § 1614.302(a)(2) (defining mixed appeal)). Mr. Sweeney has availed himself of neither avenue before filing this action.

[9] Courts have found that claims for defamation fall within the confines of the CSRA, and that federal court jurisdiction, therefore, is precluded. *See Ugarte v. Johnson*, 40 F. Supp. 2d 178, 182 (S.D.N.Y. 1999) ("[T]he deliberate construction of the remedial framework of the CSRA is persuasive in showing that Congress intended to limit federal employee grievances to its framework. Thus, there is no basis under which plaintiff can pursue an independent action in this court against her federal supervisors and employers for defamation."); *see also Saul v. United States*, 928 F.2d 829, 840-43 (9th Cir. 1991). The FTCA does not waive sovereign immunity for defamation claims against the United States. *See* Section III-D, *infra.*

[10] Mr. Sweeney presented to the OWCP claims for alleged emotional injuries supposedly resulting from reprisal for whistleblowing. *See* OWCP Notice at 11-15. The OWCP, however, declined to award compensation to Mr. Sweeney for those alleged injuries. *Id.* It is the Defendant's

Laws § 28-50-1, *et seq.*, is preempted by the Whistleblower's Protection Act of 1989 ("WPA"), 5 U.S.C. § 1221, 2302. The WPA was enacted as an amendment to the CSRA, and "protects government employees from retaliation for disclosing potentially embarrassing or damaging information about government operations." *Grisham v. United States*, 103 F.3d 24, 25 (5th Cir. 1997).[11] "However, an employee aggrieved by a violation of the WPA must seek administrative remedies as opposed to filing suit in district court." *Burrell v. United States Postal Serv.*, 164 F. Supp. 2d. 805, 813 (E.D.La. 2001) (citation omitted). The Act confers no subject matter jurisdiction on a federal district court to entertain such a claim." *Id. See Ugarte*, 40 F. Supp. 2d at 181 ("It is true that the WPA created a procedure for relief labeled an 'Individual Right of Action,' 5 U.S.C. § 1221, but that right of action is not a cause of action in a federal district court, but rather one to permit review by the MSPB."). Furthermore, courts that have addressed the issue have uniformly declined to extrapolate an implied right of action under the CSRA or WPA for whistleblower claims. *See id.* at 181-82 (collecting cases).

For the foregoing reasons, Counts One, Two, Three, Five, and Six are preempted by the CSRA and WPA, and should therefore be dismissed for lack of subject matter jurisdiction. *See*

---

understanding, however, that Mr. Sweeney has filed a whistleblower claim with the Office of Special Counsel, but that the investigation is currently pending.

[11] The WPA forbids supervisors from:

> (8) tak[ing] or fail[ing] to take . . . a personnel action with respect to any employee . . . because of --
> (A) any disclosure of information . . . which the employee . . . reasonably believes evidences--
> (i) a violation of any law, rule, or regulation, or
> (ii) gross management, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2302(b)(8).

*Grisham*, 103 F.3d 27 (affirming dismissal of whistleblower claims as precluded by the CSRA); *see also Paegle*, 813 F. Supp. at 66 (dismissing CSRA claim for failure to exhaust administrative remedies).

C. Count Four Was Not Administratively Exhausted And, In Any Event, Mr. Sweeney Is Not A Member Of A Protected Class For Title VII Purposes

Count Four alleges violation of a state statute, the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-7, *et seq.*, and does not allege violation of federal law. While the CSRA would normally apply to and preempt allegations of improper employment actions, Title VII of the Civil Rights Act of 1964, 48 U.S.C. §§ 2000e, *et seq.*, is the requisite and exclusive vehicle for all employment discrimination claims by federal employees. *See Pueschel v. United States*, 369 F.3d 345, 348 (4th Cir. 2004) ("Title VII establishes the exclusive and preemptive scheme under which federal employees can seek redress for employment discrimination."). *See Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 829-30 (1976) (holding that Congress intended Title VII to provide "an exclusive and pre-emptive administrative and judicial scheme for redress of federal employment discrimination"). Therefore, the Rhode Island FEPA is inapplicable to this case.

Even had Plaintiff cited to Title VII violations, Mr. Sweeney did not exhaust his administrative remedies, and is therefore barred from pursuing the claim in federal court.[12] "An individual who has suffered discrimination at the hands of a federal employer . . . must file an

---

[12] To the extent that Mr. Sweeney alleges in Count Four retaliation for reporting what he believed to be misconduct by his superiors, *see* Compl., ¶¶ 55-56, they are duplicative of Count Five, *see* Compl. ¶¶ 59-60, which are whistleblower claims preempted by the WPA. If they are construed as retaliatory discrimination claims, they too are preempted by Title VII, its exhaustion mandate, as well as the requirement that Mr. Sweeney allege membership in a protected class.

administrative complaint with the EEOC within 180 days of the alleged unlawful employment practice." *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005); *see* 42 U.S.C. § 2000e-15(c)(1) & 16(c). "The employee may commence a civil action against her employer if, and only if, the EEOC has dismissed the administrative complaint . . . . In light of the statutory scheme, it is unsurprising that, in a Title VII case, a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door." *Jorge*, 404 F.3d at 564 (collecting cases); *see Jensen v. Frank*, 912 F.2d 517, 520 (1st Cir. 1990) ("Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court.").

Alternatively, Count Four should dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Even assuming Mr. Sweeney had exhausted his administrative remedies, his claim of discrimination based on sexual orientation is not cognizable under Title VII. Title VII claims are analyzed under the well-established framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). The first element requires the plaintiff to show that he is a member of a protected class. *Id.* Mr. Sweeney alleges that the Defendant discriminated against him "on the basis of their belief about Plaintiff's sexual orientation . . . ." Compl., ¶ 54. However, the First Circuit has announced that, "[w]e regard it as well-settled law that, as drafted and authoritatively construed, Title VII does not proscribe harassment simply because of sexual orientation." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999) (citations omitted). *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir. 2005) (noting that, all circuits that have considered sexual orientation discrimination have concluded that, "Title VII does not prohibit harassment or discrimination because of sexual orientation.") (citation omitted). Therefore, Mr. Sweeney cannot satisfy the first element of a *prima facie* discrimination case

because he fails to allege his membership in a protected class.

D. Count Six Is Barred By The FTCA, And Otherwise By Sovereign Immunity

On the face of the Complaint, the Plaintiff fails to cite any federal statutes, other than the FTCA previously discussed, that allow him to sue the United States in federal court. The First Circuit recently and clearly stated that:

> It is beyond cavil that, as the sovereign, the United States is immune from suit without its consent. That consent usually takes the form of an express waiver of its sovereign immunity. Such a waiver cannot be implied but must be unequivocally expressed. Even then, the waiver must be strictly construed. In the absence of an applicable waiver, courts lack jurisdiction to entertain claims against the United States.

*Muirhead v. Mecham*, 427 F.3d 14, 17 (1st Cir. 2005) (internal citations omitted). *See Franconia Assoc. v. United States*, 536 U.S. 139, 141 (2002) ("A waiver of the sovereign immunity of the United States cannot be implied but must be unequivocally expressed.") (citation and internal quotation marks omitted); *cf. I.N.S. v. St. Cyr*, 533 U.S. 289, 299 n. 10 (2001) ("'Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intentions unmistakably clear in the language of the statute.'") (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)).

Specifically with respect to waiver of sovereign immunity under the FTCA, it is established law that, the waiver "has exceptions, which 'define the limits of federal subject matter jurisdiction in this area.'" *Montijo-Reyes*, 436 F.3d at 24 (quoting *Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987)). The FTCA explicitly states that the wavier of immunity "shall not apply to" a range of intentional torts, among them, "any claim arising out of . . . libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h). The First

Circuit unequivocally expressed in *Davric Maine Corp. v. United States Postal Serv.*, 238 F.3d 58 (1st Cir. 2001), that 28 U.S.C. § 2680(h) "embodies an understandable policy against compelling the public fisc to bear the costs of intentional torts committed by public employees," *id.* at 64, and that defamation is among the intentional torts enumerated in § 2680(h) that cannot be pursued against the United States, *id. See Aversa,* 99 F.3d at 1207 ("Congress [] explicitly excepted certain kinds of claims from the FTCA's otherwise broad waiver of sovereign immunity, including any claim arising out of slander and other specified intentional torts.") (citing 28 U.S.C. § 2680(h)).

Count Six alleges conduct by employees of the Defendant that are excepted from FTCA coverage - "discussed private facts about the alleged nature of Plaintiff's sexual orientation with other Defendant's agents and employees" (Compl. ¶ 63); "published a false and fictitious fact" (Compl. ¶ 65); "false light" (Compl. ¶ 67). The FTCA, therefore, does not permit Mr. Sweeney to surmount the United States' sovereign immunity from the range of alleged acts of defamation or, as styled in the Complaint, "invasion of privacy." Since Mr. Sweeney does not present any other basis on which to establish the Court's subject matter jurisdiction over Count Six, Count Six must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests the Court to dismiss the Complaint in its entirety for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and/or, with respect to Count Four, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

VICTORIA S. SHIN
Special Attorney for the
District of Rhode Island
157 Church Street
New Haven, Connecticut 06510
Telephone: (203) 821-3799
Facsimile: (203) 773-5373

**CERTIFICATE OF SERVICE**

I certify that the foregoing Memorandum in Support of Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) was served via first-class mail on this 13th day of March, 2006, on the following:

Francis J. Flanagan
Sayer, Regan, Thayer & Flanagan
130 Bellevue Avenue
Newport, RI 02840

Victoria S. Shin
Assistant United States Attorney