**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| JOSEPH A. SWEENEY, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 05-080 T |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | April 7, 2006 |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

Defendant United States of America ("Defendant" or "United States") respectfully submits its Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Pl.'s Opp'n Memo.") to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim.

## I. DISCUSSION

### A. Plaintiff Effectively Concedes Dismissal of Counts Four and Six

In his Opposition, Mr. Sweeney fails to address Defendant's observation that Mr. Sweeney did not administratively exhaust his discrimination claims and that, in any event, the discrimination he alleges -- "on the basis of [the employer's and its agents'] belief about Plaintiff's sexual orientation -- is not cognizable under Title VII, which preempts the Rhode Island statute he cites in the Complaint. *See* Complaint ("Compl."), ¶¶ 52 - 57; Defendant's Memorandum in Support of Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Def.'s Mem. In Supp. of Mot. to Dismiss"), at 12-14.

Likewise, Mr. Sweeney advanced no opposition to Defendant's argument that Count Six cannot be brought against Defendant because the United States has not waived its sovereign

immunity from claims "arising out of . . . libel, slander, misrepresentation, [or] deceit." 28 U.S.C. § 2680(h); *Davric Maine Corp. v. United States Postal Serv.*, 238 F.3d 58, 64 (1st Cir. 2001; Def.'s Mem. In Supp. of Mot. to Dismiss, at 14-15. Consequently, Mr. Sweeney effectively concedes that dismissal of Counts Four and Six is proper.

**B. Even in the Absence of FECA Preemption, the Civil Service Reform Act Preempts Plaintiff's Employment-Based Claims**

Caselaw establishes that the Federal Employee Compensation Act ("the FECA"), 5 U.S.C. §§ 8101-8193, covers the emotional injuries at issue in this case. In *Moe v. United States*, 326 F.3d 1065 (9th Cir. 2003), the Ninth Circuit stated that, "This circuit has not addressed whether psychological injury which results in physical injury is within FECA's scope. . . . [W]e hold that it is," and that "a plaintiff need only allege a colorable claim under FECA for our courts to lose jurisdiction over an FTCA action." *Id.* at 1068; *see Tippetts v. United States*, 308 F. 3d 1091, 1094-95 (10th Cir. 2002) (finding that emotional distress claim does present a FECA coverage injury) (citing *Bennett v. Barnett*, 210 F.3d 272, 274 (5th Cir. 2000); *McDaniel v. United States*, 970 F.2d 194, 195-97 (6th Cir. 1992).

The Office of Workers Compensation ("OWCP") declined to compensate Mr. Sweeney for his alleged injuries because he failed to provide adequate medical documentation to evidence causation between Defendant's alleged conduct and Mr. Sweeney's alleged emotional condition. Indeed, as OWCP's decision indicates, *see* Exhibit A of the Memorandum in Support of Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Mr. Sweeney was offered several chances to support his claim, but he chose not to comply. Lack of coverage, therefore, did not hinge on whether emotional injuries were cognizable under the FECA, since,

presumably, OWCP would not have asked for supplemental medical evidence of emotional harm unless it were, as an initial matter, willing to consider emotional injury claims. Rather, OWCP's decision resulted from Plaintiff's failure to support his claims. This is unfortunate, because this case was stayed for an extended period for the very purpose of affording Mr. Sweeney an opportunity to present the merits of his claims to OWCP. His failure to obtain compensation based on lack of relevant evidence does not establish that he can proceed under the FTCA.

Ironically, Mr. Sweeney states in his Opposition that he has appealed OWCP's January 23, 2006 decision. *See* Pl.'s Opp'n Mem. at 2. This evinces Mr. Sweeney's contradictory positions -- on the one hand he vigorously denies that the FECA applies to him while, on the other hand, he initiated an appeal of the FECA issue with OWCP to "address error, oversight, and inconsistencies." *Id.* He thus implicitly concedes that the FECA applies, or, at a minimum, that there is a question of its applicability, which nonetheless counsels dismissal of all claims of injury, namely Counts One, Two, and Three.

If, nevertheless, the Court accepts Mr. Sweeney's argument that the FECA is inapplicable to him, Counts One through Three are nevertheless preempted by the Civil Service Reform Act of 1978 ("CSRA"), Pub.L. No. 95-454, 92 Stat. 111 *et seq.* (codified as amended throughout sections of 5 U.S.C.), and he is thereby foreclosed from redress under the FTCA. Mr. Sweeney bluntly denies this, *see* Pl.'s Opp'n Mem. at 6, but cites not a single case to support his position. In contrast, there is substantial authority establishing that, as a federal employee whose grievances arise from his employment relationship, Mr. Sweeney's sole remedial channel is the CSRA. *See generally, Bush v. Lucas*, 462 U.S. 367 (1983). For example, the Ninth Circuit announced that, "federal employees alleging employment-related tort claims subject to the CSRA

may not bring an action under the FTCA. This is true '*even where a particular litigant does not have a remedy available under the statutory scheme.*'" *Kennedy v. United States Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) (quoting *Pereira v. United States Postal Serv.*, 964 F.2d 873, 876 (9th Cir. 1992)) (quoting *Pipkin v. United States Postal Serv.*, 951 F.2d 272, 275 (10th Cir. 1991)); *see Jarvis v. Cardillo*, No. 98 Civ. 5793 (RWS) at *3, 1999 WL 187205 (S.D.N.Y. Apr. 6, 1999) ("A plaintiff complaining of actions that occurred during the course of employment is restricted to the remedies provided by the CSRA."); *see also Carducci v. Regan*, 714 F.2d 171, 175 (D.C.Cir. 1983) (detailing the types of actions contemplated by CSRA).

"The CSRA provides a plaintiff with a remedy in the event any action was taken against [him] as a result of a 'prohibited personnel practice' -- albeit not a judicial remedy." *Jarvis*, 1999 WL 187205, at *3 (citations omitted). A "prohibited personnel action" includes any "disciplinary or corrective action," transfer or reassignment," or "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(2)(A); *see Ferris v. Am. Fed'n of Gov't Employees*, 98 F. Supp. 2d 64, 66 (D. Me. 2000) (citing 5 U.S.C. § 2302(a)(2)(A)). According to the Complaint, all the allegedly objectionable conduct were personnel actions as described in 5 U.S.C. § 2302(a)(2)(A). *See* Compl., ¶¶ 2-4, 7, 9, 12, 16, 18, 20-25, 27, 29. There is no allegation that relevant conduct occurred outside the employment context. In effect, Mr. Sweeney merely dissatisfied with personnel actions taken against him, including disciplinary measures, transfer, and changes in working conditions. The court's language in *Ferris* felicitously applies to the instant case: "Stripping away the personnel actions taken against [plaintiff], []he is left alleging that h[is] co-workers treated h[im] poorly. But to allege damages arising out of this poor treatment, [plaintiff] inevitably points to the various personnel actions

taken against h[im]." 98 F. Supp. 2d at 67. This is precisely what Mr. Sweeney does in this action, and accordingly it is proper to find, as did the court in *Ferris*, that "the CSRA's administrative scheme preempts [Mr. Sweeney's] state and common law claims against" the federal defendant." *Id.* at 68.[1] *See Hasan v. Glickman*, No. 97 Civ. 3344, 97 Civ. 3646, 1999 WL 38169, at *4 (E.D.La. Jan. 26, 1999) (dismissing tort claims for lack of subject matter jurisdiction because the claims "stem from Plaintiff's federal employment relationship and are based on personnel actions," and, accordingly, plaintiff's sole remedy for tort claims is the CSRA); *see Rollins v. Marsh*, 937 F.2d 134, 138 (5th Cir. 1991) (rejecting plaintiff's claim that the CSRA and *Bush v. Lucas* did not apply to him because, despite plaintiff's assertion that he sought redress for alleged conduct that was arguably unrelated to work.

The Fifth Circuit in *Rollins,* endorsing the Ninth Circuit's position in *Rivera v. United States*, 924 F.2d 948 (9th Cir. 1991), announced that, while the Supreme Court has not fully explicated the relationship between the FTCA and the CSRA, *Lucas* and *United States v. Fausto*, 484 U.S. 439 (1988)

> describe the CSRA remedies as being the comprehensive and exclusive procedures for settling work-related controversies between federal civil-service employees and the federal government. Thus the *Rivera* court concluded that 'Congress's purpose in enacting the CSRA was to channel grievances and disputes arising out of government employment into a single system of administrative procedures and remedies, subject to judicial review. To permit FTCA claims to supplant the CSRA's remedial scheme would certainly defeat that purpose.' We agree. The remedies available . . . under the CSRA preclude recovery under the FTCA.

[1] The court in *Ferris*, by way of footnote, explained in the alternative that, even assuming the plaintiff were able to segregate alleged emotional injuries not related to personnel actions, she would still fail to state a claim for intentional infliction of emotional distress under Maine common law. 98 F. Supp. 2d at 68 n. 4. Defendant similarly believes that Mr. Sweeney has not alleged the necessary elements to state an intentional or negligent infliction of emotional distress claim under Rhode Island law. *See infra.*

*Rollins*, 937 F.2d at 139 (quoting *Rivera*, 924 F.2d at 951).

Mr. Sweeney's failure to avail himself of the CSRA's exclusive administrative remedies does not give him license to seek judicial relief under the FTCA. *See Walton v. Cieslicki*, No. 93 Civ. 6901, 1994 WL 62954, at *2 (S.D.N.Y. Feb. 18, 1994) (noting that the "FTCA is a 'residual statute' that is preempted by the CSRA's comprehensive employment relations scheme"); *see also Kennedy*, 145 F.3d at 1078 ("Because the relevant provisions of the CSRA . . . constitute a comprehensive scheme governing employment relations, employment-related tort actions under the FTCA are precluded.") (citation omitted). Counts One, Two, and Three should therefore be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

2. The Whistleblower's Protection Act of 1989 Bars Count Five

Mr. Sweeney also failed to provide authority to establish that the Whisteleblower's Protection Act of 1989 ("WPA"), 5 U.S.C. § 1221, 2302, is inoperative in this case, thereby preempting Count Five brought under the Rhode Island Whistleblower's Act, R.I. Gen. Laws, § 28-50-1 *et seq*. In addition, the WPA provides another possible basis to dismiss the emotional distress claims in Counts Two and Three, as the Complaint strongly suggests that the personnel actions taken against him were in response to his alleged whistleblowing against his supervisors.

The court in *Ferris* observed that the alleged tortious actions at issue stemmed from the plaintiff's claim that she was a whistleblower. That effectively converted her claims from generic torts to that of retaliation for reporting federal employer's alleged unlawful conduct. 98 F. Supp. 2d at 67-68. Consequently, the court concluded that since "all of [plaintiff's] claims arise out of her whistleblowing and are 'inextricably linked' to her employment," the plaintiff

"should proceed through the CSRA administrative process." *Id.* at 67. The same is true in this case. *See* Compl., ¶¶ 6, 14, 17. The WPA, as an amendment to the CSRA, protects federal employees from retaliation for reporting allegedly unlawful or improper conduct. *See* 5 U.S.C. § 2302(b)(8). And, as with the CSRA, the WPA provides an exclusively administrative remedy, and does not create a cause of action in district court. *See Ghaly v. U.S. Dep't of Agriculture*, 228 F. Supp. 2d 283, 288 (S.D.N.Y. 2002).

Mr. Sweeney provides no legal basis for his conclusory view that the CSRA, and by implication the WPA, do not preempt Counts One, Two, Three, and Five. Bare and unsupported assertions are insufficient to withstand a jurisdictional challenge, especially when it is Plaintiff's burden to demonstrate that federal jurisdiction exists. *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) ("A plaintiff [] may not rest merely on unsupported conclusions or interpretations of law" and "the party invoking jurisdiction of the federal court carries the burden of proving its existence." (internal quotation marks omitted) (citations omitted). Therefore, since the CSRA and the WPA apply to Counts One, Two, Three, and Five, subject matter jurisdiction does not lie, and the Counts should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**C. Plaintiff Fails to State a Claim for Intentional or Negligent Infliction of Emotional Distress Under State Law**

Even assuming, *arguendo*, that the court does not find that either the FECA or the CSRA preempts Mr. Sweeney's claims for intentional and negligent infliction of emotional distress, Rule 12(b)(6) dismissal is still proper because the Complaint fails to allege the requisite elements of the state law claims.

1. <u>Mr. Sweeney Does Not Allege Elements of Intentional Infliction of Emotional Distress</u>

"Under Rhode Island law, a plaintiff must prove four elements to maintain a cause of action for intentional infliction of emotional distress: (1) the conduct must be intentional or done with reckless disregard for the probability of causing emotional distress; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress suffered must be severe." *Forest v. Pawtucket Police Dept.*, 290 F. Supp. 2d 215, 232 (D.R.I. 2003) (citation omitted).[2] Another essential element required by the Rhode Island Supreme Court is physical symptomology. *Id.*

Bearing in mind the severity of the cause and effect of the alleged emotional distress required to state a cause of action under Rhode Island law, a review of the Complaint fails to satisfy the elements for an intentional infliction of emotional distress claim. For instance, Mr. Sweeney claims that he became physically ill as a result of a notice of suspension. Compl., § 28. Surely issuing a notice of suspension does not exceed all bounds of decency. In any event, Mr. Sweeney's claims of physical effects amount to no more than bare assertions that this court

---

[2] In *Norton v. Hoyt*, 278 F. Supp. 2d 214 (D.R.I. 2003), the court quoted the pertinent Restatement (Second) of Torts to underscore the high threshold to establish an intentional infliction of emotional damages claim:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Id.* at 220 (quoting Restatement (Second) of Torts § 46 cmt. d at 73 (1965)).

previously found deficient to withstand a Rule 12(b)(6) challenge. *See Socha v. Nat'l Assoc. of Lettercarriers Branch No. 57,* 883 F. Supp. 790 (D.R.I. 1995) (dismissing intentional infliction of emotional distress claim because Complaint did not allege manifestation of physical ills resulting from asserted emotional distress, and that "an allegation of pain and suffering, without more, is just the kind of bald assertion that cannot pass muster on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)"); *see U.S. v. AVX Corp.*, 962 F. Supp. 2d 108, 115 (1st Cir. 1991) (""In connection with the run-of-the-mine motions brought under Rule 12(b)(6), a reviewing court is obliged neither to credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation.").

For the foregoing reasons, even assuming the state law claim for intentional infliction of emotional distress could proceed under the FTCA, Mr. Sweeney fails to state a claim for such injury. Count Two should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

2. <u>Negligent Infliction of Emotional Distress Does Not Apply to Mr. Sweeney</u>

The Rhode Island Supreme Court recently observed that "only two groups of plaintiffs are able [] to seek recovery under a theory of negligent infliction of emotional distress: 'those within the 'zone-of-danger' who are physically endangered by the acts of negligent defendants, and by bystanders related to a victim whom they witness being injured." *Perrotti v. Gonicberg*, 877 A.2d 631, 636 (R.I. 2005) (citing *Jalowy v. Friendly Home, Inc.*, 818 A.2d 698, 710 (R.I. 2003); *Marchetti v. Parsons*, 638 A.2d 1047, 1049, 1051 (R.I. 1994)); *see Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 581 (D.R.I. 1996). Additionally, plaintiffs must "as a result of experiencing the accident, suffer serious emotional injury that is accompanied by physical

symptomatology." *Perrotti*, 877 A.2d at 637. Mr. Sweeney does not allege that his emotional distress resulted from being physically endangered by the negligent acts of Defendant, nor does he claim bystander liability. The court in *Iacampo* dismissed the plaintiff's negligent infliction of emotional distress claim because she alleged that her emotional distress resulted from injuries to herself, and the court therefore could "draw no inferences from the Complaint which would support a claim of bystander liability." 929 F. Supp. at 581. Similarly, Mr. Sweeney seeks compensation for alleged injuries to *himself*, and therefore falls beyond the scope of an action for negligent infliction of emotional distress. Consequently, Count Three should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II. CONCLUSION

For reasons set forth above and in Defendant's Memorandum in Support of its Motion to Dismiss, the United States requests that the Court dismiss this matter in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and/or pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

VICTORIA S. SHIN
Special Attorney for the
District of Rhode Island
157 Church Street
New Haven, Connecticut 06510
Telephone: (203) 821-3799
Facsimile: (203) 773-5373

**CERTIFICATE OF SERVICE**

I certify that the foregoing Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) was served via first-class mail on this 7th day of April, 2006, on the following:

Francis J. Flanagan
Sayer, Regan, Thayer & Flanagan
130 Bellevue Avenue
Newport, RI 02840

Victoria S. Shin
Assistant United States Attorney