UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOSEPH A. SWEENEY :
:
v. : C.A. No. 05-80T
:
UNITED STATES OF AMERICA :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion to Dismiss (Document No. 21) (the "Motion") filed by Defendant United States of America. Defendant seeks dismissal pursuant to Fed. R. Civ. P.12(b)(1) and 12(b)(6). Plaintiff Joseph A. Sweeney ("Plaintiff"), filed a timely Objection to Defendant's Motion to Dismiss (the "Objection") (Document No. 22).

The Motion has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Pursuant to the parties' request, there was no hearing held on the Motion. After reviewing the Motion and the Objection, in addition to performing independent research, this Court recommends that Defendant's Motion to Dismiss (Document No. 21) be GRANTED, and that the case be DISMISSED.

**Facts**

The facts underlying the Complaint concern Plaintiff's employment as a Paralegal Specialist at the Naval Station Newport, Newport, Rhode Island. Compl. ¶ 1. These factual allegations must be taken as true in assessing a motion to dismiss under Fed. R. Civ. P. 12. Beginning in the Fall of 2001, Plaintiff complained to several superiors at the Naval Station about his belief that Lieutenant Thomas Rutledge, the Naval Station's Staff Judge Advocate, was engaged in illegal activities.

Compl. ¶¶ 3, 6. Specifically, Plaintiff alleged that Lieutenant Rutledge was operating a private real estate business from the Staff Judge Advocate's Office. Id. ¶ 6.

Also in the Fall of 2001, the Commanding Officer at the Naval Station, Captain Ruth Cooper, took several actions against Plaintiff, including suspending him, isolating him from co-workers and embarrassing him. Compl. ¶¶ 7-9. Captain Cooper referred to Plaintiff as a "homosexual" and a "loser." Id. ¶¶ 10, 11. She told employees at the Naval Station that Plaintiff was "not going to have a job for very long." Id. ¶ 11. As a result of these events, Plaintiff suffered from "severe depression." Id. ¶ 13.

In 2002, Plaintiff reported to the Executive Office that he believed Captain Cooper was engaged in illicit activities, was abusing her authority and wasting federal funds. Id. ¶ 14. On April 9, 2002, Captain Cooper ordered that Plaintiff be served with a "Notice of Proposed Five (5) Day Suspension." Id. ¶ 16. Then, on April 10, 2002, Plaintiff filed a complaint with the Inspector General of the Department of Defense setting forth his allegation that Lieutenant Rutledge was engaged in illegal activities. Compl. ¶ 17. On April 18, 2002, Plaintiff was suspended from work for the period of April 23, 2002 through April 25, 2002. Id. ¶ 18.

On June 25, 2002, Captain Cooper was notified that the Navy Region Northeast Office of the Inspector General was conducting an investigation into the allegations made in Plaintiff's complaint. The following day, Captain Cooper served Plaintiff with a "Notice of Proposed Removal." Id. ¶ 20. He was again suspended on September 18, 2002, for ten days. Id. ¶ 23. While Plaintiff was serving his suspension, Captain Cooper ordered that Building 690, the building which contained Plaintiff's office, be demolished and renovated. Id. ¶ 24. Plaintiff was the only employee displaced as a result of the demolition and renovation. Id. ¶ 25.

Then, on April 16, 2003, Captain Cooper sustained the Notice of Suspension and Plaintiff was suspended from work, this time for twenty-one days, which was set to commence on April 28, 2003. Id. ¶ 29. The reason for the suspension was unauthorized absence from work on October 29, 2002. Id. ¶ 27. Plaintiff's job performance was at all times satisfactory. Id. ¶ 5.

On August 4, 2003, the Navy began an internal investigation concerning Captain Cooper. Id. ¶ 30. On August 26, 2003, Captain Cooper was dismissed from her command at the Naval Station for mismanagement of resources, creating a negative command climate, poor leadership abilities, poor command morale and questionable personnel actions. Id. ¶ 31. This lawsuit was commenced on February 23, 2005, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671. Plaintiff's six-count Complaint seeks damages and other relief for negligent hiring/supervision/retention, intentional infliction of emotional distress, negligent infliction of emotional distress, violations of the Rhode Island Fair Employment Practices Act, violations of the Rhode Island Whistleblower's Act and infringement of right to privacy.

**Standard of Review**

Defendant has moved to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and lack of personal jurisdiction. Motions to dismiss under Federal Rules 12(b)(1) and 12(b)(6) are subject to the same standard of review. See Masterson v. United States, 200 F. Supp. 2d 94, 97 (D.R.I. 2002) citing Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir.1994). In ruling on such a motion, the Court construes the complaint in the light most favorable to the plaintiff, taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences. Id. See also Morey v. Rhode Island, 359 F. Supp. 2d 71, 74 (D.R.I. 2005). The Court will dismiss the claims only when "it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Masterson, 200 F. Supp. 2d at 97.

**Discussion**

I. Applicability of the Federal Employees' Compensation Act

The first issue presented is the applicability of the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101, et seq. ("FECA") to this case. Although Plaintiff is not suing here under FECA, he is pursuing an administrative claim under FECA. FECA, "provides a comprehensive system of compensation for federal employees who sustain work-related injuries." United States v. Lorenzetti, 467 U.S. 167, 168 (1984), and is the "exclusive avenue of redress for a federal employee's 'injury sustained while in the performance of his duty.'" Bruni v. United States, 964 F.2d 76, 78 (1st Cir. 1992) (citation omitted). In Bruni, the First Circuit Court of Appeals explained that, "[t]he liability imposed by FECA supplants all other liability (including tort liability under the FTCA or other statutes) on the part of the United States to an injured federal employee." Id. In other words, FECA is the exclusive remedy for work-related injury. The Supreme Court has noted that FECA "was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193-194 (1983).

In order to obtain coverage under FECA, a federal employee must file a claim for compensation with the United States Office of Workers' Compensation Programs ("OWCP") which administers FECA. The OWCP then "decides all questions arising under the FECA." A determination by the OWCP is "final and conclusive and may not be reviewed by a court of law." Bruni, 964 F.2d at 79.

Defendant originally filed its Motion to Dismiss on June 20, 2005, arguing that FECA preempted the claims brought by Plaintiff. Subsequently, the parties agreed that "there was a substantial question as to whether FECA coverage existed in the instant case" and Plaintiff filed a claim for FECA coverage. Pl.'s Objection at p. 2. While the FECA claim was pending with the OWCP, this case was stayed. Then, on January 23, 2006, the OWCP issued its opinion denying FECA coverage to Plaintiff. In the opinion, the OWCP stated that Plaintiff "failed to meet [his] burden of proof in establishing that [he] was injured in the performance of duty, as alleged, as required for coverage under the [FECA]." OWCP Notice at p. 1. Because the OWCP determined that Plaintiff was not injured in "performance of duty," FECA does not bar the present lawsuit.

In his Objection to the Motion to Dismiss, Plaintiff notes that he is appealing the FECA coverage determination by the OWCP, but he also argues that, based on the OWCP's ruling, FECA does not bar this lawsuit. Although Plaintiff's arguments are inconsistent, the Court is inclined to accept the decision of the OWCP as it currently stands and find that FECA does not bar the present lawsuit since Plaintiff does not have a claim under FECA. Even though the Court does not find that FECA bars this lawsuit, that issue is academic, as the Civil Service Reform Act provides an adequate and independent basis upon which to dismiss this case.

II. Applicability of the Civil Service Reform Act

Having determined that FECA is not a bar to this lawsuit, the Court now considers whether the Civil Service Reform Act of 1978, 5 U.S.C. §§ 2301, et seq. ("CSRA") preempts this case. The CSRA "provide[s] a comprehensive framework for personnel policies governing federal employees." Roth v. United States, 952 F.2d 611, 614 (1st Cir. 1991) (citations omitted). As part of that framework, Congress set forth "procedures for challenging 'prohibited personnel practices.'" Id. A

"prohibited personnel practice" is defined under the CSRA as a "disciplinary or corrective action...transfer or reassignment...[or]...any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(2)(A).

A covered federal employee that claims to have been subjected to a prohibited personnel practice is required to "petition the Office of Special Counsel...and seek correction before the Merit Systems Protection Board." Paegle v. Dep't of the Interior, 813 F. Supp. 61, 66 (D.D.C. 1993). The Merit Systems Protection Board provides "an initial administrative review of employment action before any judicial remedy may be sought." Mills v. United States Postal Serv., 977 F. Supp. 116, 120 (D.R.I. 1997). A judicial remedy is only available in the Federal Circuit. See, e.g., United States v. Fausto, 484 U.S. 439, 464 (1988) ("[t]he Federal Circuit is the only Court of Appeals with jurisdiction to review cases on appeal from the Merit Systems Protection Board..."). In interpreting the CSRA, the First Circuit Court of Appeals has stated that, "[t]here is...no serious dispute that the CSRA preempts challenges to personnel actions brought under federal law." Berrios v. Dep't of Army, 884 F. 2d 28, 30 (1st Cir. 1989). The "legislative history of the CSRA establishes beyond dispute that Congress intended that statute to provide an exclusive procedure for challenging federal personnel decisions." Id. Thus, if the claims set forth by Plaintiff fall within the ambit of the CSRA, Plaintiff's remedy will lie with the Merit Systems Protection Board, and not with this Court.

Defendant claims that Plaintiff is limited to the relief provided under the CSRA and is barred from seeking recovery in this Court. On the other hand, Plaintiff asserts that the CSRA is not a bar to this action. In support, Plaintiff simply states that the argument is "without merit" because the CSRA does not "provide[ ] the relief for damages that Plaintiff is seeking for both the negligent and intentional acts of the Defendant that FTCA provides...." Pl.'s Objection at p. 6.

Turning to consideration of the facts which form the basis of Plaintiff's claims, all of the facts relate to events which occurred at his workplace, such as the treatment of Plaintiff by his supervisors and coworkers, and disciplinary actions taken against him. Moreover, each of the complained-of acts falls within the definition of a "personnel practice" under the CSRA. 5 U.S.C. § 2302(2)(A). Plaintiff asserts, for example, that he was tortured, shunned, isolated, verbally assailed, embarrassed, humiliated and unjustly suspended by his supervisor, Captain Cooper and her subordinates. Compl. ¶ 9. Plaintiff also claims that, as a result of the treatment by Captain Cooper and other coworkers, Plaintiff suffered clinical depression. Id. ¶ 13. Although these are only a few of the allegations set forth, they are typical and indicative of the types of claims lodged against Defendant, and certainly fall within the broad definition of a "prohibited personnel practice," which includes "disciplinary or corrective action...transfer or reassignment...[or]...any other significant change in duties, responsibilities, or working conditions...." 5 U.S.C. § 2302(2)(A).

In reaching the conclusion that the claims alleged in this case are preempted by the CSRA, the Court is persuaded by the reasoning applied by District Judge D. Brock Hornby in Ferris v. Am. Fed'n of Gov't Employees, 98 F. Supp. 2d 64 (D. Me. 2000). In Ferris, the Plaintiff was a former employee of a Veterans Administration Medical Center in Maine, and brought claims for, inter alia, violation of Maine's whistleblower and human rights acts; and common law claims for intentional infliction of emotional distress, defamation and interference with advantageous business relationship. Id. at 65. The District Court noted that the CSRA "preempt[s] state and common law remedies," and may even "provide 'less than a complete remedy for the wrong.'" Id. at 66, citing Bush, 462 U.S. at 373. The Court also noted that the policy reasons which underlie the CSRA aim to, "prevent[ ] piecemeal development of civil service law in various federal district courts throughout the United

States and ensure[ ] that all federal employees receive substantially equivalent remedies." Id. at 67 (citations omitted). The reasoning set forth in Ferris is sound, and applicable to the present case. Plaintiff's state statutory and common law claims brought under the FTCA in this case are substantially similar to those pursued by the plaintiff in Ferris. Following Judge Hornby's sound reasoning, this Court concludes that Plaintiff's claims here are also "inextricably linked" to his federal employment and thus are preempted by the CSRA. Id. at 68. Like the plaintiff in Ferris, this Court finds that after "[s]tripping away the personnel actions taken against [him]," Plaintiff is only left with his claim that his "co-workers treated [him] poorly....In other words, once [Plaintiff's] complaints are stripped of the personnel actions, [he] simply cannot state a claim that the behavior of the individual [supervisors] caused [him] a cognizable injury." Id. at 67. Because the CSRA provides the exclusive remedy available to Plaintiff for his employment-related claims against a federal agency, Plaintiff must pursue any such claims before the Merit Systems Protection Board under the CSRA. Thus, this Court recommends that Plaintiff's Complaint be DISMISSED in its entirety on CSRA preemption grounds.

## Conclusion

For the reasons discussed above, I recommend that Defendants' Motion to Dismiss (Document No. 21) be GRANTED and that Plaintiff's Complaint be DISMISSED WITH PREJUDICE due to the lack of subject matter jurisdiction in this Court. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal

the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

LINCOLN D. ALMOND
United States Magistrate Judge
June 29, 2006